Price, J.
There is a common understanding between the parties to this litigation, that the plaintiff in error sold to the defendant in error, on or about September 2, 1899, the piano, stool and scarf mentioned in the record, and that the sale was upon an agreed consideration of $265 to be paid $10 in cash and the balance in monthly installments of six dollars each, and one of three dollars, each to bear six per cent, interest from *153 date. To represent these deferred payments forty-two notes of six dollars each, and one for three dollars, were executed by the purchaser to the organ company, and, while the answer denies it, it is not disputed in the evidence, that the chattel mortgage was signed by the purchaser, which by its terms secures the payment of said notes. The point of variance relates to the character of the sale, it being asserted by the purchaser that it was conditional, so that the title remained in the vendor until all the payments were made, while the vendor affirms that the sale was absolute, thereby vesting the title to the goods in the purchaser, subject to be divested only on the breach of some or all of the covenants and conditions of the chattel mortgage.
If the sale was conditional, the rights of the parties thereto were defined by Sections 4155-2 and 4155-3, Revised Statutes. As these provisions of the statute are appealed to by defendant in error in support of her contention, we insert them in this opinion.
Section 4155-2, as in force at the time the mortgage was given (September 2, 1899), and at the time the piano was replevined (May 13, 1902), read as follows: -
“(4155-2) Sec. 1. [Conditional sales of personal property; condition, when void; evidence of condition; filing of statement.] In all cases where any personal property shall be sold to any person, to be paid for in whole or in part in installments, or shall be leased, rented, hired or delivered to another on condition that the same shall belong to the person purchasing, leasing, renting, hiring *154 or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain in the vendor, lessor, renter, hirer or deliverer of the same, until such sum or the value of such property or any part thereof shall have been paid, such condition, in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers and mortgagees in good faith, and creditors, unless such condition shall be evidenced by writing, signed by the purchasers, lessor, renter, hirer, or receiver of the same, and also a statement thereon, under oath, made by the person so selling, leasing or delivering any property as herein provided, his agent or attorney of the amount of the claim, or a true copy thereof, with an affidavit that the same is a copy, deposited with the clerk of the township where the person signing the instrument resides at the time of the execution thereof, if a resident of the state, and if not such a resident, then with the clerk of the township in which such property is sold, leased, rented, hired, or delivered is situated at the time of the execution of the instrument; but when the person executing the instrument is a resident of a township in which the office of county recorder is kept, or when he is a non-resident of the state, and the property is within such township, the instrument shall be filed with the county recorder; and the officer receiving any such instrument shall proceed with the same in all respects as he is required to do by section four thousand one hundred and ñfty-two of the Revised Statutes of Ohio, and shall receive the same fees as are *155 allowed by law for similar services in other cases. [82 v. 238.]”
Section 4155-3 was amended March 19, 1902, but as the amendment is not material to the case at bar we give it as in force when the mortgage was executed:
“(4155-3) Sec. 2. [Vendor of property conditionally sold may not retake possession without repaying certain part of price paid.] Whenever such property is so sold or leased, rented, hired or delivered, it shall be unlawful for the vendor, lessor, renter, hirer or deliverer, or his or their agent or servant, to take possession of said property without tendering or refunding to the purchaser, lessee, renter or hirer thereof, or any party receiving the same, the sum or sums of money so paid after deducting therefrom a reasonable compensation for the use of such property, which shall in no case exceed fifty per cent, of the amount so paid, anything in the contract to the contrary notwithstanding, and whether such condition be expressed in such contract or not, unless such property has been broken or actually damaged, and then a reasonable compensation for such breakage or damage shall be allowed. [82 v. 238.]"
The section first quoted provides, in substance, that a contract of sale of personal property to any person to be paid for in whole or in part in installments on condition that the property sold shall belong to the purchaser whenever the amount paid shall be a certain sum, the title to remain in the vendor until such sum shall have been paid, shall be void as to the title remaining in the *156 vendor, as to all subsequent purchasers and mortgagees in good faith, and creditors, unless such contract be evidenced by writing signed by the purchaser. It must have a statement thereon under oath of the seller, his agent or attorney, of the amount of the claim. It is also required that the contract so endorsed, or’ a sworn copy thereof, shall be deposited or filed with a certain township officer, or in a certain case with the county recorder. As between the parties to the sale the condition that the title to the property sold shall remain in the vendor until the purchase price or a fixed part thereof shall be paid, may rest in parol. The written evidence of the contract is required and that the same be duly filed in order to stand as against subsequent purchasers, mortgagees in good faith and creditors.
In the case at bar where is the evidence of a conditional sale of the piano, stool and scarf ? The plaintiff, to make out its case under the petition introduced the chattel mortgage and unpaid notes, the execution of which was not disputed, and rested its case. These documents, whose execution was not denied, made a case for recovery in replevin which was the character of the action. In order to defeat the plaintiff's right to so recover, it was incumbent upon the defendant to establish her cross-petition wherein she sets up that the sale was not absolute but conditional, and that the material condition in the contract of sale, was that the title to the goods purchased should remain in the seller until the purchase money installments be paid. The burden was upon her to establish the vital condition, not by inference that one *157 might draw, but by direct evidence as to the terms of the contract.
Assuming that burden what does she show ? She alone testified on the subject, and no one contradicts her. When she went to the store room of the organ company in September, 1899, she was met by Mr. Morey, a salesman of the company. She looked at some of the pianos, and she was asked to “tell the whole transaction.” Ans. “As I was saying, I looked at the pianos. I saw a piano I liked, and I told him I would like to take that piano, and of course he told me it was a good piano, and I asked him what the piano cost. He said two hundred and sixty-five dollars, and the agreement I made with him, I would pay ten dollars down. That was the agreement I made, and six dollars a month, and I paid him ten dollars, and he said — ‘Now, Miss Crambert I know you will be prompt in your payments.’ I said, T will try to be as prompt as I can,’ arid he said, ‘when you have the piano paid for — when all the payments are paid up the piano will be yours.’ ”
On motion of counsel for the company, this answer was stricken out, but it seems that, as found on the next page of the printed record, the court recanted and permitted the following inquiry and answer: “State what that was that was said.” Ans. “I told him that I would like to have the piano: that I would pay ten dollars- down and six dollars a month and six per cent. So he told me then as soon as the piano was paid' for — made my payments, the piano would be mine, and he asked me in the rear office, and he gave me some papers, *158 and I was not used to anything like that, and I signed the papers and never read them.”
Although the court struck out the first statement, it is 'found in the printed record, and as the trial court changed its opinion as to its competency, we will treat it as properly before us to be considered with the latter statement which was printed. A comparison of these two narrations of past events impresses us with the fallibility of human memory, especially when one is called .upon several years afterwards to repeat a conversation even on business affairs. The purchase was made in September, 1899, and the witness was being examined at May term, 1905 — more than five years, and it is plain that the two statements radically differ. The latter does not contain an expression found in the former, while it does contain new matter not found in the former. Nothing is said in the former about going to the office and signing papers. But taking both for what they express, do they prove or tend to prove the contract alleged in the cross-petition? It is there alleged that property “was purchased from plaintiff by defendant by way of conditional sale on the installment plan * * * that the title to said piano, stool and scarf was to remain in the vendor, the plaintiff herein * * * .” And if we look to the section of the statute first quoted, we see that it must be a part of the contract of sale that the title to the property is to remain in the vendor, for in contracts of bargain and sale, unless so expressly provided, the title passes with the sale and delivery. Therefore to still hold the title to goods sold and delivered, the vendor must have a *159 contract to that effect. ' The right to so hold title must not depend on inference or conjecture, and it is doubtful whether such a contract may be implied from circumstances, but we need not go so far.
There was no negotiation between.the salesman and the lady purchaser touching the title, or where it should abide in case of sale. He did not say to her, “Your terms of payment are satisfactory, but we will hold the title to the piano, et cetera, until we receive all the payments,” or any similar words. She did not say, “You may hold the title until you are paid,” or anything to that effect. The nearest approach to any statement regarding title, is as found in her first testimony, where she quotes the salesman as saying: “Now, Miss Crambert, I know you will be prompt in your payments,” and he said, “when you have this piano paid for, when all the payments are paid up the piano will be yours.” Or, as she quotes him in her second statement,— “so he told me then as soon as the piano was paid for, made my payments, the piano would be mine * * * y He saj¿ nothing about the company still holding the title, and therefore she had no opportunity to agree to that as a condition in the sale. She says, “the agreement I made with him, I would pay ten dollars down. That was the agreement I made and six dollars a month, and. I paid him the ten dollars.”
Neither party said a word about the title remaining in the vendor and therefore the minds of the parties never met on that point. . What the salesman said about the piano becoming her property when the payments were made, is but the *160 expression of an opinion. Whether he was authorized to make the remark or not, is immaterial, because, in our judgment, it did not establish, or tend to establish, a contract between the purchaser and the company, that it should hold the title until the payments were made. The expression of an opinion by the salesman falls far short of making a contract of conditional sale.
Moreover, the salesman and the purchaser did not understand that such a contract had been made, for he requested her to step into the office, where papers were prepared for her signature. If a contract of conditional sale had been consummated, notes and a chattel mortgage would have been foreign to the transaction. She says she signed the papers without reading them, but in answer to a question, stated that it took her from a half to three quarters of an hour to sign all of them. There were forty-three notes and the mortgage. On each of the notes and in the last line thereof is the language: “Secured by chattel mortgage on. Kingsbury piano No. 13954.” She signed her name directly under this line where she could not avoid seeing the purport of the paper. She had forty-three chances to see that warning, and must, be held to have know what was so plainly in view. In the body of the mortgage she covenanted that she owned the piano, etc., and had a right to encumber them by the instrument.
This mortgage was duly filed, and not until the company insisted on payment of long overdue notes, did she think of the law of conditional sales. Finding that her own evidence fails to establish a conditional sale the title remaining in *161 the vendor, she was not entitled to the benefit of Section 4155-3, Revised Statutes, and the trial court should have so held and should have so charged the jury.
The learned discussion of the limitations on an agents authority which we find in the briefs is now irrelevant.
The answer and cross-petition does not pray for reformation of the mortgage, but simply denies its execution and the execution of the notes, in the form of general denial, but on the trial the execution of these various instruments was admitted. There is no prayer for any relief by way of redemption or otherwise, no fraud alleged in obtaining the mortgage, so our only course is to reverse the judgments of the lower courts and render judgment for plaintiff in error, and this we do.
Judgment reversed and judgment for plaintiff in error.
Shauck, C. J., Summers, and Davis, JJ., concur.